# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEAN GERMAIN | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-13-382 |
| WEXFORD HEALTH SOURCES, INC., *et al.* | * | |
| Defendants | * | |

## **MEMORANDUM**

On August 2, 2013, this court ordered defendants to supplement their dispositive motion addressing plaintiff's claim medical staff did not treat him for the effects of chemical agent exposure and to provide the court with information concerning a treatment plan for plaintiff's complaints that he was experiencing blood in his stool and sustained an 18 pound weight loss. ECF No. 43. In addition, this court directed named correctional officers to be served and respond to the allegation plaintiff was not treated for chemical agent exposure. *Id*.

Now pending is the supplemental motion to dismiss or for summary judgment filed on behalf of defendants Wexford, Buck, Durst, and Cortez ("medical defendants") (ECF No. 50) and a motion to dismiss or for summary judgment filed on behalf of defendants Shearin and Roderick (ECF No. 51). Upon review of the record, the court finds a hearing unnecessary to the resolution of the matters pending before it.

### Background

The issues currently pending before the court concern a cell extraction taking place at North Branch Correctional Institution (NBCI) on January 17, 2013, during which plaintiff was exposed to pepper spray. He claims that following the incident he was not given a shower by either correctional or medical staff members, and was instead placed in an isolation cell without

running water, sheets or a blanket. ECF No. 1 at p. 4. He claims the water was not turned on in the cell until approximately five hours later when the shift changed. *Id.* Additionally, plaintiff alleges on February 16, 2013, he began to see blood in his stool and suspected the ibuprofen he was prescribed for ankle pain was causing it. ECF No. 7 at p. 3. He further alleged he has suffered an 18 pound weight loss over a short period of time. ECF No. 38. Other facts regarding the events leading up to plaintiff's injuries are set out fully in this court's August 2, 2013 memorandum and are incorporated herein by reference. ECF No. 43.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court

must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

### Removal of Chemical Agent

Previously this court observed that: "[d]efendants have not explained why medical staff did not treat plaintiff for the effects of chemical agent exposure, nor have they provided the court with information concerning the procedures in place for that treatment." ECF No. 43 at p. 12. The allegation raised by plaintiff was that he was placed in a cell without running water for five hours after his exposure to chemical agents, depriving him of the ability to remove the agent himself after being denied removal by defendants. *Id*. This court required medical defendants to provide a response to this allegation and required service of the complaint on correctional defendants for purposes of responding to the allegation as well. *Id*.

Medical defendants state that the protocol for evaluating an inmate exposed to pepper spray requires nursing staff to examine the inmate to identify any acute medical injuries requiring further evaluation or immediate intervention. ECF No. 50 at Ex. 1. They further explain that the agent used in pepper spray is derived from hot cayenne pepper which operates as an inflammatory irritant upon contact with skin, eyes, nasal passages, and mouth. *Id*. In general the pepper spray does not cause lasting physical damage and symptoms dissipate in 15 to 45 minutes. *Id*. There are, however, some individuals in whom pepper spray can trigger respiratory distress or failure necessitating the respiratory assessment done by nursing staff. *Id*.

3

Medical defendants further aver that decontamination involves removal of clothes and rinsing the exposed areas of the body with water. *Id*. It is the practice to provide inmates with the opportunity to shower after they have been medically cleared, but the shower is not performed by medical staff. *Id*. Correctional staff are charged with the responsibility of providing a decontamination shower to inmates exposed to pepper spray. *Id*. Following plaintiff's clearance by defendant Buck in consultation with Dr. Ottey, he was released to correctional staff, who offered plaintiff a decontamination shower. *Id*. at Ex. 2.

Correctional defendants state that when plaintiff was offered a decontamination shower, he refused the offer. ECF No. 51. Three correctional officers present during the incident have provided statements under oath that plaintiff was offered a decontamination shower by Lt. McAlpine and he declined the offer. *Id*. at Ex. 2, p. 3; Ex. 3, p. 3; and Ex. 4, p. 3. Following this exchange, plaintiff was escorted to a cell.[1]

In his opposition response, plaintiff asserts that medical staff regularly treat inmates for the effects of chemical agent exposure. ECF No. 78 at Ex. A, pp. 6 -7. He claims documents filed in another case pending in this court indicate that defendant Buck treated inmates for pepper spray exposure. *Id*., citing *Burrell v. Stouffer, et al.*, Civil Action PJM-13-1020 (D. Md.). Plaintiff states he had the exhibits from that case in his possession, but when he provided them to correctional staff for copies they were confiscated. *Id*. at Ex. A. The motion for summary judgment filed in *Burrell* includes an account of treatment for pepper spray exposure following use of force prompted by a fight between three inmates: Bernard Burrell, Ricardo Dornes, and Mike Sommerville. Burrell was not exposed to pepper spray as he fled the scene of the fight when officers arrived. The relevant portion of the report states:

---

[1] Correctional defendants do not address the allegation that plaintiff was placed in a cell without running water for a period of five hours.

> Officer Syverstad placed handcuffs on Inmate Sommerville and escorted him to the Housing Unit #3-A/B Holding Cell to await medical treatment. When medical personnel arrived, Officer Syverstad escorted Inmate Sommerville to the Housing #3 Medical Room. Inmate Sommerville was medical assess by Carla Buck RN. Inmate Sommerville received treatment for exposure to pepper spray. Inmate Sommerville was also treated for four lacerations to the head and neck area. Inmate Sommerville was escorted to the Housing Unit #3 A/B Holding Cell by Officer Syverstad. Officers Edward Kelly and Syverstad conducted a strip search of Inmate Sommerville. No contraband was found. Officers Kelly and Syverstad escorted Inmate Sommerville to Housing Unit #3 Shower B-4. After Inmate Sommerville received a decontamination shower . . . [he] was escorted to Housing Unit #1.
>
> Officer Smith escorted Inmate Dornes to the Housing Unit #3 Medical Room where he was treated for exposure to pepper spray by Carla Buck RN. Officer Smith escorted Inmate Dornes to the Housing Unit #3 C/D Holding Cell where he was strip searched by Officers Kelly and Smith. . . . Inmate Dornes was escorted to Housing Unit #3 Shower D-1 by Officers Kelly and Smith. After Inmate Dornes received a decontamination shower he was escorted to Housing Unit #1 by Officers Kelly and Smith.

*Burrell*, Civ. Action PJM-13-1020 at ECF No. 16, Ex. 2, p. 2 (Investigator's Summary). There are no further relevant exhibits, pictures, affidavits, or statements filed in that case. Plaintiff, however, states that two inmates, Ronnie Winbush and Eddie Murphy, will testify that medical staff treated them for chemical agent exposure by flushing their eyes and face with water. ECF No. 78 at Ex. A, pp. 7-8.

The report filed in *Burrell* is consistent with the medical defendant's assertion that their role in cases where inmates have been exposed to chemical agents is to assess them for immediate respiratory distress and the decontamination shower is the responsibility of correctional staff. Whether medical staff have on other occasions provided more than a simple assessment of an inmate's respiratory condition following exposure to pepper spray is not material. If the established procedure is to entrust the responsibility for full body decontamination to correctional staff, medical defendants in this case behaved reasonably and are entitled to summary judgment on this claim.

5

With respect to correctional defendants, plaintiff maintains he never refused a decontamination shower and that he was put into a cell with no running water. He further disputes the length of time exposure to pepper spray inflicts pain and discomfort. Additionally, plaintiff asserts that he has not been provided adequate access to evidence in the control of correctional defendants to adequately address their allegations.

In cases alleging excessive use of force, this court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, 599 U.S. 34 (2010). In the instant case the initial decision for the application of force was found to pass constitutional muster. If, however, there is evidence that the effects of the use of force were allowed to linger long after the need for it expired, there is a colorable Eighth Amendment claim for inflicting harm to plaintiff without adequate justification. *See Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992) (force used is excessive if inflicted "maliciously and sadistically to cause harm."). In light of the fact that correctional defendants do not address plaintiff's allegation that he was put into a cell with no running water and his requests to turn the water on were repeatedly denied for a period of five hours as well as plaintiff's claim under oath he never refused a decontamination shower, there exist genuine disputes of material facts. Thus, summary judgment in favor of correctional defendants on this claim is inappropriate on the record now before the court.

Plaintiff filed a motion to amend the complaint (ECF No. 47) which was granted (ECF No. 65). On December 18, 2013, the litigation coordinator at NBCI accepted service on behalf

of Lt. McAlpine, Lt. Cross, Sgt. G. Forney, and Corporal J. Wilt. ECF No. 70. No response to the complaint has been filed on their behalf. The defendants on behalf of whom no response has been filed are the correctional staff who are alleged to have denied plaintiff a decontamination shower. The only correctional defendants who have responded to the complaint, Shearin and Roderick, are supervisory defendants who are not alleged to have participated actively in denying plaintiff relief from the effects of a chemical agent. Shearin and Roderick assert they are entitled to dismissal of the claim against them because adequate evidence to support supervisory liability has not been produced. ECF No. 51. Their failure to address the claim that plaintiff was placed in a cell without running water, however, means there is no basis for this court to find that Shearin and Roderick were unaware of plaintiff's predicament. Thus, all correctional defendants (McAlpine, Cross, Forney, Wilt, Shearin, and Roderick) will be required to respond to that allegation.

Plaintiff's motion for continuance seeks to delay this court's ruling on defendants' motion pending his opportunity to review the video of the incident and to review his relevant base file documents. ECF No. 77. Previously this court granted correctional defendants' motion for a protective order, excusing them from engaging in discovery. ECF No. 76. In light of the disposition of the claims against correctional defendants, the order shall be quashed and defendants will be required to provide plaintiff with access to the evidence stated. A scheduling order, which shall be included in the order following this memorandum, will govern the deadlines applicable to discovery.

## Medical Treatment

With respect to plaintiff's claim that he was not treated for complaints of hematochezia (blood in his stool) and significant weight loss, medical defendants state that his first report of

hematochezia was in November 2010. By July 25, 2011, plaintiff also reported weight loss and he was referred to a general surgeon, Dr. Oyogoa. ECF No. 50 at Ex. 1, p. 3. Ogoyoa recommended a colonoscopy, which plaintiff underwent on September 15, 2011.

The results of the colonoscopy revealed presence of internal hemorrhoids and a small polyp which was excised for biopsy.[2] Based on the results of the colonoscopy, plaintiff's hematochezia was attributed to the internal hemorrhoids. Due to plaintiff's internal anatomy, the gastroenterologist could not view plaintiff's large colon or upper intestinal tract during the colonoscopy. A barium enema study was recommended to evaluate plaintiff's large intestine, but on December 1, 2011, when plaintiff was scheduled for the test, he refused the medical trip. The trip was not rescheduled because plaintiff did not present symptoms that suggested upper gastrointestinal bleeding and the hematochezia remained stable, with intermittent flare-ups due to plaintiff's hemorrhoid condition. Plaintiff was educated by medical staff regarding maintaining a proper diet to avoid constipation and formation of hard stools which could irritate hemorrhoids and increase bleeding. ECF No. 50 at Ex. 1, p. 4.

On May 1, 2013, plaintiff's stool samples again tested positive for blood and blood work was ordered. In addition, plaintiff's ibuprofen order was discontinued and acetaminophen was substituted because ibuprofen can cause gastrointestinal irritation of ulcers and exacerbate bleeding. *Id.* Plaintiff did not submit a complaint concerning this condition until June 18, 2013.[3] On that date, plaintiff complained he had been seeing blood in his stool since June 2, 2013, and that he believed he had been poisoned by correctional officers in April of that year. Plaintiff was scheduled to be seen by nursing staff on June 20, 2013, but refused to be handcuffed behind his

---

[2] The polyp was benign. ECF No. 50, Ex. 1, p. 5.

[3] In the interim, plaintiff refused transport to the medical unit for purposes of completing blood work-up and for follow up evaluation on May 15, 2013 and May 27, 2013.

back for transport to the medical department, so he was not seen. On June 22, 2013, plaintiff again refused to be seen for his complaint and on July 25, 2013, refused to allow blood to be drawn for completion of lab work. ECF No. 50 at Ex. 1, p. 5.

Plaintiff was seen on August 10, 2013, by Dr. Ottey and reported that the rectal bleeding was intermittent and first began after a bout of diarrhea. Plaintiff did not report abdominal pain or a significant change in appetite. At the time of the exam plaintiff, who is 6'2", weighed 172 pounds which is within the range of a normal body mass index. No clinical evidence of poisoning or active gastrointestinal bleeding were found and plaintiff's vital signs were within normal limits. Plaintiff's fecal study was, however, positive for blood. Ottey ordered a complete blood count and chemistry panel for the purpose of identifying any anemia indicative of significant loss of blood. The results of those tests were pending at the time defendants filed the supplemental motion. ECF No. 50 at Ex. 1, p. 6.

In his opposition, plaintiff asserts that medical defendants have not adequately assessed the cause of his bleeding because they failed to comply with the recommendation that he undergo a barium enema procedure. ECF No. 78. He claims he never refused the procedure, rather, he was transported to the hospital for the procedure on November 15, 2011, and January 16, 2012, and each time it was determined the tests could not be performed because of bad preparation. Although he claims he was told the test would be rescheduled, no apparent effort has been made to reschedule the test. Indeed, medical defendants assert in their supporting affidavit that the test is no longer considered necessary even though plaintiff continues to experience blood in his stool. Additionally, plaintiff asserts his current blood tests confirm that he is now anemic as a result of the blood loss he has experienced.

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the medical staff members were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). There is no Eighth Amendment violation where diagnostic tests are declined based on medical assessments of the patient. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985) (disagreement with medical opinion is not deliberate indifference).

It is clear from the undisputed portions of the record that a diagnostic process was begun in response to plaintiff's complaints, but was not completed as originally planned. This was not, however, due to a deliberate attempt to deny needed care to plaintiff. Rather, his condition was re-assessed as time passed and it was determined a different course was better suited to address his needs. The affidavits and records submitted by medical defendants do not address his current physical condition because their supplemental motion to dismiss or for summary judgment was filed before any test results were returned. To the extent that plaintiff's assertion that his current blood tests confirm he is anemic, the court presumes further steps will be taken to further assess plaintiff's medical condition as illustrated in the records filed by medical defendants. Given the efforts made thus far to accurately diagnose and treat plaintiff's symptoms, the evidence does not support a finding that medical defendants acted with callous disregard to a life-threatening or painful condition. They are, therefore, entitled to summary judgment in their favor on this claim.

A separate order incorporating the content of this memorandum follows.

Date: March 11, 2014          /s/
                              J. Frederick Motz
                              United States District Judge