## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEAN GERMAIN | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-13-382 |
| WEXFORD HEALTH SOURCES, INC., et al. | * | |
| Defendants | * | |

\*\*\*

### MEMORANDUM

Pending  in the above-entitled civil rights action is a motion to dismiss or for summary judgment filed by defendants Cross, G. Forney, McAlpine, Christopher Preston, Richard Roderick, Bobby P. Shearin, J. Wilt, and Jeremy Wolford ("defendants"). ECF 135. Plaintiff Jean Germain ("Germain") opposes the motion. ECF 137. Also pending are Germain's motions to compel discovery (ECF 128) and to change venue (ECF 133). The sole remaining issue in this case is whether Germain was denied an opportunity to take a decontamination shower following his exposure to chemical agents and thereafter placed into a cell for a period of five hours with no running water. The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, defendants motion, construed as a motion for summary judgment, shall be granted and judgment entered in their favor.

### Non-Dispositive Motions

In his motion to compel discovery, Germain asserts that his interrogatories and requests for production of documents served on counsel for correctional defendants were not given proper responses.[1] ECF 128.   Germain first alleges that he served interrogatories directed to Christopher Preston and Jeremy Woolford on counsel for correctional defendants on January 22,

---

[1] Counsel for correctional defendants did not respond to the motion to compel discovery, nor did she seek a protective order regarding the discovery requests made by Germain.

2015 and no responses were provided as of the date his motion to compel was filed, March 25, 2015. *Id.* Defendants Preston and Woolford were added as parties in this case by order dated December 19, 2014 (ECF 1180, and service was not accepted on their behalf by counsel until June 15, 2015,[2] the date counsel entered an appearance on their behalf. ECF 134. At the time Germain served the interrogatories on counsel, Preston and Woolford were not yet served and counsel was under no obligation to answer the interrogatories on their behalf. Although the better practice would have been for counsel to seek a protective order under Fed. R. of Civ. Proc. 26, counsel's oversight in failing to file such a motion does not preclude this court from denying the motion to compel in this instance as the discovery request was improperly served.

Secondly, Germain takes issue with the objections filed by counsel in response to his request for documents. ECF 128-1 at pp. 5 – 7. While "discovery rules are given a 'broad and liberal treatment,'" *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co. Inc.*, 967 F.2d 980, 983 (4th Cir.1992) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)), the discovery sought must be relevant. *See* Fed. R. Civ. Proc. 26(b)(1).[3] To be relevant, the information sought must be information that "bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Hickman*, 329 U.S. at 501. Requests for production of documents must describe the documents sought with "reasonable particularity." Fed. R. Civ. Proc. 34(b)(1). Permissible responses to requests for production of documents must either state the request is permitted or state an objection with a reason for the

---

[2]     The discovery deadline in this case expired on June 19, 2015. ECF 117 at p. 2.

[3]     Rule 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who knows of any discoverable matter.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

objection. *See* Fed. R. Civ. Proc. 34(b)(2)(B), *see also Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*, 246 F.R.D. 522, 530-31(S.D. W.V. 2007) (boilerplate objections to request for production of documents do not comply with Rule 34).  Prior to filing a motion to compel, Fed. R. Civ. Proc. 37(a) requires that the moving party provide "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Germain asserts he sent a letter to counsel in an attempt to resolve the discovery dispute on February 25, 2015, but received no response.  ECF 128 at p. 4.

Germain's request for production of documents and counsel's responses are as follows:

REQUEST NO. 1:  A complete copy of the record concerning this case.
RESPONSE TO REQUEST NO. 1: The defendants object to this interrogatory (sic) because the [r]equest is vague and cannot be answered with any certainty.

REQUEST NO. 2:  A complete copy of the IIU File pertaining to the cell extraction which is the subject matter of this case.
RESPONSE TO REQUEST NO. 2: Defendants object to providing a complete copy of the unredacted IIU file, the redacted portions contain personal information which is confidential.  To provide personal information about correctional personnel presents a security concern due to the nature of their work in the correctional system.  Mr. Germain is being provided a copy of the redacted IIU report.

REQUEST NO. 3:  A complete copy of the use of force manual, the directives concerning the videotaping of all cell extractions, and DCD 110-26, search procedures.
RESPONSE TO REQUEST NO. 3:  The defense objects to providing this information because the Department of Public Safety and Correctional Services has determined that inmates should not be provided copies of these materials due to security concerns in the correctional environment.  Further, DCD 110-26 was rescinded in April, 2009 so that it is not relevant to the issues herein and is not reasonable calculated to lead to admissible evidence.

REQUEST NO. 4: A complete copy of all documents which relates to, describes, summarize, or memorialize any and what treatment an inmate should receive after being exposed to pepper spray.
RESPONSE TO REQUEST NO. 4:  The defense objects to responding to the Request because it is too broad and such information is irrelevant and not

reasonably calculated to lead to admissible evidence.

> REQUEST NO. 5:  Access to the video recording of the cell extraction which is the subject matter of this case.
> RESPONSE TO REQUEST NO. 5:  Mr. Germain was previously provided access to the video recording of the cell extraction. Indeed, in a recent pleading he refers to a video relating to the event and what it purportedly shows. See ECF Doc. No. 126 at p. 1.[4]
>
> REQUEST NO. 6: A complete copy of Plaintiff's medical record.
> RESPONSE TO REQUEST NO. 6:  The Defendants object to providing Mr. Germain with a complete cop[y] of his medical record because the records are not relevant to the limited incident of January 17, 2013 and such information is irrelevant and not reasonable calculated to lead to admissible evidence.

ECF 128-1 at pp. 5 – 6.  At the time the requests for production of documents were served on counsel for correctional defendants, the only remaining issue to resolve in this case was whether Germain had been intentionally denied a decontamination shower and left in a cell without running water for five hours with the intent to prolong the pain caused by the use of pepper spray. *See* ECF 80 and 81.  The two objections regarding relevance, responses 4 and 6, are sustainable and provide a justifiable basis for denying the request.  Request 4 sought all documents relating to the treatment for exposure to pepper spray; such treatment is not a contested issue in this case.  Rather, the issue to be resolved is whether correctional defendants prevented Germain from receiving it.  Request 6 sought a complete copy of Germain's medical record.  The January 17, 2013 incident does not require access to Germain's entire medical record.  This is particularly true where, as here, medical defendants were sued, found to be entitled to summary judgment in their favor, and dismissed from the case.  The objection raised is a sustainable basis for declining the request.

Two of the responses provided, responses 2 and 5, object to the request on the basis that

---

[4]     The cite provided to the record of this case is incorrect.  The csited document is this court's marginal order denying Germain's motion to take judicial notice, docketed at ECF 103.  In that motion, Germain does refer to "video evidence."  Germain viewed the video on March 31, 2014, but was not given a copy of the DVD. *See* ECF 96 and ECF 135-1 at p. 3, n. 2 (Memorandum in Support of Motion to Dismiss or for Summary Judgment).

Germain already received the information sought or received access to it. Request 2 sought a copy of the Internal Investigation Unit ("IIU") file, which was provided to Germain with personal information about correctional staff redacted. The redacted information is not relevant to the claim pending before the court. Request 5 pertains to the video to which Germain was given access prior to the request; he provides no reason why he required a copy of the DVD or multiple showings of the DVD in the motion to compel. Germain fails to state a basis for the motion to compel on these two requests.

The request for a copy of the complete record (request 1) is in fact vague and overly broad. As such, the request represents an onerous burden on counsel and appears to be Germain's effort to engage in a fishing expedition, which is not a valid basis for a discovery request. The response to request 3 is also a valid objection; not only is the information sought security related, representing a threat to public safety if provided, it is also irrelevant to the extent a portion of the information sought concerns a directive that has been rescinded. For these reasons, Germain's motion to compel shall be denied.

Germain's motion to change the venue of this case to the Southern Division is based on his claim that he was not provided with copies of orders denying motions he filed in this case. ECF 133. He asserts the Clerk simply mailed him the first page of his motions and did not include the order. *Id.* He implies that the Clerk took these actions in order to intentionally deny his access to the orders issued by the undersigned in this case. *Id.* Specifically, Germain is referring to his motion for extension of time and for reconsideration (ECF 102); to take judicial notice (ECF 103); and to appoint counsel (ECF 127). All of those motions were denied by this court through marginal order. The documents provided to Germain and filed as exhibits with his motion to change venue are the first page of each motion with the handwritten notation that the

5

motion is denied; the date it was denied; and the undersigned's signature. ECF 133 at Ex. 1; *see also* ECF 125, 126, and 129. The motion to change venue shall be denied.

## Background

The relevant facts underlying the remaining claim raised by Germain were summarized by this court in its March 11, 2014 memorandum opinion and order and are incorporated herein by reference. ECF 80. Germain, an inmate confined to North Branch Correctional Institution (NBCI), was forcibly extracted from his cell on January 17, 2013, by correctional officers after he "breached security" by tying one end of his bed sheet around the security slot in the door to his cell and the other end around his bunk. ECF 135 at Ex. 1, p. 2. In addition, Germain had covered the window on the door to his cell. *Id.* at p. 3. Attempts to resolve the issue by asking Germain to remove the sheet himself were made, but to no avail. Lt. McAlpine was given permission to assemble a "Planned Use of Force Team" for purposes of resolving the security breach. *Id.* Both Lt. McAlpine and Correctional Officer Simpson, who is a trained negotiator, attempted to avoid the need for forcible extraction of Germain from his cell, but Germain refused to come to the door to be handcuffed after repeated warnings were issued that if he did not comply force would be required. *Id.* at pp. 2 – 3.

McAlpine sprayed a burst of pepper spray under Germain's door and additional orders were given to Germain to come to the door to be handcuffed. *Id.* at p. 3. Germain continued to ignore the orders and another burst of pepper spray was deployed into the cell. *Id.* Again, Germain did not comply with orders to come to the door to be handcuffed and the team then entered the cell. *Id.* Defendants claim that Germain "charged the shield" carried by the team into the cell. *Id.* Germain was forced to the ground, handcuffed, shackled, and escorted out of the cell to the medical room on the housing unit. *Id.*

In a video recording of the events described, Germain is seen being escorted backwards with his head bent down by two officers wearing tactical gear. He is allowed to turn around to go down the steps facing forward. Upon entering the medical room, he is seated on the examination table. McAlpine asks Germain repeatedly if he wants to take a shower after the nurse examines him. Germain remains silent despite the question asked by McAlpine. When the nurse asks Germain where he is injured, he is able to speak clearly and he is able to list with specificity each area of his body he claims he was injured during the cell extraction. Germain does not appear to be breathless and it is clear he is aware of his surroundings and of the events taking place. Germain is again asked after the nurse finishes her examination whether he wants to take a shower and he remains silent. Following the medical examination, Germain is taken to another area where he is subjected to a strip search. After the strip search is complete, McAlpine asked Germain several more times if he wanted a shower. At one point while Germain was facing away from McAlpine he mumbled some response, but would not repeat it when he was again asked if he wanted a shower. Germain's silence is interpreted as a refusal and he is taken to another cell, his restraints are removed, and the video recording is ended. ECF 135 at Ex. 5.

### Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Credibility determinations may not be made on summary judgment, but "[w]hen parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009), *see also Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991). Where undisputed video evidence utterly discredits a plaintiff's version of the facts, there is no obligation to adopt plaintiff's version of the facts in deciding a motion for summary judgment. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

## Analysis

As this court observed previously in this case, if "there is evidence that the effects of the use of force were allowed to linger long after the need for it expired, there is a colorable Eighth Amendment claim for inflicting harm to plaintiff without adequate justification." ECF 80 at p. 6, citing *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992) (force used is excessive if inflicted "maliciously and sadistically to cause harm."). Because Germain alleged he was denied the opportunity to take a decontamination shower, then left in a cell with no running water and denied requests for the water to be turned on, this court required correctional defendants to address Germain's statements made under oath. *Id.* Correctional defendants have now provided this court with irrefutable video evidence that Germain was asked repeatedly if he wanted a decontamination shower and he refused to answer. It is clear to this court, upon viewing the video in its entirety, that Germain was capable of understanding questions posed to him and of responding to those questions. His steadfast refusal to answer the question regarding a shower cannot be interpreted as a denial of same by correctional defendants.

In opposition to defendants' motion Germain filed an affidavit pursuant to Fed. Rule of Civ. Proc. 56(d). ECF 137. He states in that affidavit that the video (defendants' exhibit 5) is not admissible evidence because it is unaccompanied by an affidavit stating that it is a true and accurate portrayal of the events recorded. He further claims that the video was "doctored" because no one ever asked him about a decontamination shower while he was in the medical room, but that he was asked for the first time after being strip searched. He asserts that he requires access to an expert to prove the video is not accurate and he requires access to various other documents to produce additional evidence that he suffered a serious injury and that protocols were not followed.

9

Even if Germain's assertion that he was not asked about a shower in the medical room is assumed to be true, that assertion does not refute the numerous other occasions when he was asked if he wanted a decontamination shower. Additionally, his steadfast insistence that he "never refused" a shower is simply an attempt by him to lend form over substance. Defendants have no ability to force Germain to answer the question, nor were they required by the Constitution to interpret his silence as anything other than a refusal. Germain's assertions regarding the water being turned off in his cell and the length of time he suffered the effects of the chemical agent are irrelevant in light of his refusal to answer the question regarding a shower. This court declines to permit Germain to manufacture a claim against correctional staff through his refusal to answer a simple question, which had he answered in the affirmative would have relieved the effects of the chemical agents, and later insist he did not refuse the shower. Such an interpretation of the evidence currently before this court would be sophistry.

By separate order which follows, defendants' motion to dismiss or for summary judgment, construed as a motion for summary judgment, shall be granted, judgment shall be entered in their favor, and this case shall be closed.

_____12/4/15_____
Date

_____/o2c_____
J. Frederick Motz
United States District Judge