# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEAN GERMAIN | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-13-382 |
| RICHARD RODERICK, *et al*. | * | |
| Defendants | * | |

***

## MEMORANDUM

The above-entitled case was remanded to this court by the Fourth Circuit Court of Appeals for consideration of plaintiff's claim against defendants Preston, Wolford, and McAlpine subjected him to excessive force during a cell extraction that took place on January 17, 2013, at North Branch Correctional Institution ("NBCI"). *See Germain v. Wexford Health Services, Inc., et al*., Slip Op. No. 16-6117 (4th Cir. 2016) at ECF 149. Plaintiff subsequently voluntarily dismissed the claim against McAlpine. ECF 153 & 154. Defendants Preston and Wolford filed a motion to dismiss or for summary judgment[1] (ECF 158) which is opposed by plaintiff (ECF 161). For the reasons that follow, defendants' motion to dismiss or for summary judgment must be denied.

Also pending are plaintiff's motion for reconsideration (ECF 156) of this court's order (154) on his motion for leave to file an amended complaint (ECF 153); and a motion to appoint counsel (ECF 160). In his motion for reconsideration plaintiff states that his amended complaint, naming as a defendant Officer Marken, was based on his 2014 review of video footage of the cell extraction which established conclusively that McAlpine was not inside his cell and could not have been the person who twisted his ankle. ECF 156 at pp. 2 – 3. Upon review of the video

---

[1] Defendants' motion for extension of time (ECF 157) shall be granted.

recording in 2014, plaintiff states he became aware of a "possible cause of action against defendant Marken." *Id.* at p. 3. Plaintiff assigns error to this court's finding that the claim as to Marken, raised for the first time in the amended complaint (ECF 152) filed on December 21, 2016, was filed outside the statute of limitations because he did not discover the cause of action until he reviewed the video footage of the cell extraction on an unspecified date in 2014. ECF 156 at pp. 5 – 6.

Plaintiff did not include this discovery theory for purposes of the statute of limitation in his motion for leave to file an amended complaint. ECF 152. Plaintiff reviewed the video footage from the housing unit tier on March 28, 2014, and the video footage from the hand-held video camera on March 31, 2014. ECF 96. Further, plaintiff was given the opportunity to review his prison base file on March 25, 2014, and provided a copy of the Use of Force Report on March 31, 2014. *Id.* A copy of the Internal Investigation Unit ("IIU") report was provided to plaintiff on April 17, 2014. *Id.* Plaintiff had adequate information to both surmise that McAlpine was not inside the cell during the extraction and that Officer Marken was a member of the extraction team since April 17, 2014, yet he waited until December 21, 2016, to dismiss his claim against McAlpine and name Marken as a defendant.[2] This court finds that permitting the proposed amendment would be prejudicial to Marken, who would now be called upon to answer claims that are more than four years old. Leave to amend a complaint may be denied where, as here, "the amendment would be prejudicial to the opposing party, there has been bad faith on the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999). Plaintiff's motion for reconsideration shall be denied.

---

[2] During the interim, plaintiff was appointed counsel and the complaint was again amended to add Wolford and Preston as defendants in this case. ECF 118.

2

I will leave plaintiff's motion to appoint counsel (ECF 160) for decision by the magistrate judge to whom I am assigning the case.

## I. BACKGROUND

The relevant factual background for purposes of defendants' pending dispositive motion was stated by the Fourth Circuit in the opinion remanding the case in part as follows:

> Germain claims that Preston beat him on his head and face, knocking a tooth loose, and that either Wolford or McAlpine twisted his right foot, causing severe pain.
>
> ******
>
> We observe that neither Preston, Wolford, nor McAlpine addressed Germain's claim that, during the cell extraction, he was punched in the face, knocking a tooth loose, and had his right foot twisted in such a way to cause severe pain. The Defendants did not refute the claim or show that the use of such force was justified under the circumstances.* In light of the fact that these three Defendants failed to address this particular claim, we are compelled to vacate that part of the court's order addressing this claim and remand for further proceedings.

ECF 149 at pp. 5 – 6. As noted, plaintiff dismissed his claims against McAlpine, leaving only defendants Preston and Wolford as defendants.

Defendants assert that on January 17, 2013, plaintiff breached security when he tied one end of a bed sheet around the security slot door located on his cell door and the other end around his bed. McAlpine claims he tried to resolve the problem through use of "Confrontational Avoidance Techniques" so that plaintiff could comply with orders to allow the security slot to be secured, but those attempts were unsuccessful. ECF 158 at Ex. 1, p. 2. Plaintiff had also covered the cell window and the light in his cell. *Id.* at p. 3. McAlpine was given authority to assemble a Planned Use of Force Team (a.k.a.: "extraction team").[3] *Id.* at p. 2.

---

[3] Members of the extraction team were as follows: Lt. George McAlpine, Lt. Robert Cross, Officers Jeremy Wolford, Christopher Preston, Christopher Robinson, Adam Logsdon, Corey Simpson, Joseph Marken, and Sgt. Jamie Farris. ECF 158-5 at p.16.

3

Officer Simpson, a trained negotiator, attempted further negotiations with plaintiff, but those efforts also failed and plaintiff was then advised that if he did not come to the cell door, force would be used against him to gain compliance with orders. *Id.* at pp. 2 – 3. At that time, McAlpine sprayed a short burst of pepper spray under the door of the cell and more orders were given to plaintiff to come to the door. *Id.* at p. 3. Plaintiff ignored the orders and another short burst of pepper spray was deployed into the cell. *Id.* Pepper spray was not used again after this occasion. *Id.*

When the extraction team entered the cell, defendants claim that plaintiff charged the shield being carried by the team member in front, Officer Preston. *Id.* at Ex. 2 (Use of Force Report). Plaintiff made this charge from the opposite side of the cell from the door. *Id.* Officers Preston and Robinson pushed plaintiff backwards and down onto the floor. *Id.* Preston removed the shield from on top of plaintiff and attempted to control him, but plaintiff rolled back and forth on the floor and Preston punched plaintiff with a closed fist in his torso in an effort to control his conduct. *Id.* When plaintiff complied, shackles were placed on his ankles by Officer Wolford and he was then escorted to the medical unit. *Id.* Wolford was the fourth man on the extraction team to enter plaintiff's cell and he was directed to control plaintiff's legs. ECF 158 at Ex. 3. Once plaintiff was under control, Wolford put shackles on plaintiff's ankles. *Id.*

By request of Lt. Bradley Wilt, the use of force was investigated by Detective Peterson of the IIU. ECF 158-5 at p. 18. Prior to the investigation, Lt. William Miller concluded that the use of force against plaintiff was proper and that the officers' conduct was consistent with Correctional standards as set forth in the Use of Force Manual. *Id.* at p. 16. Peterson's report notes that plaintiff "sustained a loose upper front tooth and a small cut to his bottom lip" and that

"there were no injuries to staff." *Id.* at p. 17. Peterson interviewed plaintiff as a part of the investigation. *Id.* at p. 23.

Plaintiff said that he held his food tray slot open because he was upset about his food and when Officer Wilt, who was doing "feed-up" rounds on the tier, returned to plaintiff's cell, Wilt was unable to close the slot door. *Id.* Plaintiff admitted that when Sgt. Forney and Sgt. Farris came to his cell and told him to close the slot, he refused to do so. *Id.* Plaintiff stated that Forney, Farris and Lt. McAlpine came to his cell to close the slot and plaintiff admitted he was holding the tray slot open and refused direct orders to allow it be closed. *Id.* When the extraction team arrived, plaintiff stated that one of the officers cut the string he had tied to the slot and then sprayed pepper spray under his door. *Id.* Plaintiff further admitted he had the window in his cell door and the light inside covered. *Id.* Plaintiff admitted that he was asked to remove the covering from the cell door window and that he refused to do so and explained to Peterson that when the second burst of pepper spray was delivered, he moved to the back of the cell for fresh air. *Id.*

Plaintiff further told Peterson that officers came into his cell and knocked him down to the floor with the shield they were carrying. *Id.* He claimed that all of the officers involved beat him and that his hands were cuffed behind his back while he laid face-down on the cell floor. *Id.* at pp. 23 – 24. He stated that McAlpine twisted his ankle while he was on the cell floor and claimed he was certain it was McAlpine who had done so because he heard his voice. *Id.* at p. 24. Plaintiff stated that after officers brought him to his feet, they escorted him to medical where he was examined by a nurse. *Id.*

Plaintiff told Peterson that the nurse told him he would lose the tooth that was loosened; that his face was x-rayed the following day; and he was told by the doctor the incident had

aggravated a pre-existing jaw injury. *Id.* at p. 24. Peterson's report does not make further mention of plaintiff's claim that his ankle was injured during the incident. Plaintiff denied resisting officers' efforts to restrain him during the incident. *Id.*

Peterson reviewed the video documentation of the incident which revealed that McAlpine never entered the cell with the extraction team. *Id.* at p. 25. As a result, Peterson found that plaintiff's claim that McAlpine assaulted him was unsupported by the evidence and that no further action would be taken on the claim. *Id.* at p. 26.

Peterson did not interview defendants Preston and Wolford as a part of the investigation; the allegation that prompted Peterson's investigation was plaintiff's claim that McAlpine twisted his ankle during the extraction. ECF 158-5 at p. 20 (indicating Lt. Wilt requested an investigation into plaintiff's claim against McAlpine). Preston and Wolford prepared reports following the use of force, which they submit as exhibits to the dispositive motion along with their declarations indicating the records are accurate. ECF 158-3 and 158-4.

In Preston's report he indicates that he was the first man on the extraction team to enter plaintiff's cell and was assigned to "the shield wearing vest #4 and helmet #7." ECF 158-3[4] at p. 2. Preston recalls that Lt. Cross used a utility knife to cut and remove the bed sheet that was tied around the security slot and that Lt. McAlpine continued to order plaintiff to come to the door to be handcuffed. *Id.* When plaintiff continued to refuse, even after pepper spray was deployed by McAlpine, the cell was opened and the extraction team was ordered to enter the cell and control plaintiff. *Id.* at p. 3. Preston states that plaintiff "charged towards the shield, from the opposite side of the cell." *Id.* Preston "pushed [plaintiff] backwards with the shield and to the floor of the cell." *Id.* Once plaintiff was on the floor and Preston removed the shield, he claims that plaintiff

---

[4] ECF 158 attachment 3 is erroneously identified as Wolford's declaration and attachment 4 is erroneously identified as Preston's declaration on the court's electronic docket.

6

began rolling back and forth on the floor, resisting Preston's attempts to physically control plaintiff. *Id.* Preston admits to punching plaintiff with closed fists to his torso in an effort to control him; he does not indicate how many times he punched plaintiff or how long this interaction lasted, but indicates that plaintiff "finally complied." *Id.* Handcuffs were put on plaintiff by Robinson with the assistance of Logsdon; leg irons were applied by Wolford. *Id.* Preston and Robinson helped plaintiff to his feet and escorted him to the medical room. *Id.*

Wolford's report states in relevant part that "[o]nce Inmate Germain was brought under control, I was able to place [him] in leg irons." ECF 158-4 at p. 3. The remaining narrative mirrors Preston's statement and states that he was the fourth man into the cell, and he was assigned vest #10 and helmet #10. Wolford does not mention the bed sheet being cut, nor does he describe plaintiff rolling back and forth on the floor or that closed fist punches to his torso were used to bring plaintiff under control. *Id.* at pp. 2 – 3.

In his opposition response, plaintiff claims in an affidavit under oath that he never charged toward the officers after they entered his cell. ECF 161 at p. 2. He states that at the time his door was opened and officers came into the cell, he was standing "at the cell back window gasping for air." *Id.* at p. 3. He maintains that officers rammed him in the back with the shield while he was standing at the window and he was taken to the floor. *Id.*

Plaintiff further denies rolling his body back and forth while on the floor because he "had over one thousand pounds of human flesh sitting over top of me pinning [his] body to the floor." *Id.* He states that while he was on the floor, Preston sat on his shoulders, controlling his head, and Wolford sat on his legs, controlling his feet. *Id.* His hands were then cuffed and following being handcuffed, "some of the officers were hitting [him] softly in [his] torso and ribs while

7

Officer Preston was hitting [him] in [his] face." *Id.* at p. 4. He further alleges that "at some point" Wolford, "got up, lifted my right foot and began twisting it." *Id.*

Plaintiff claims that when he "screamed in agony" from the "severe pain" to his knee and ankle, Preston hit plaintiff in his mouth, "knocking out my front tooth and covered my mouth to suppress my screams while telling me to 'shut up.'" *Id.* at p. 5. Plaintiff alleges that officers on extraction teams wear gloves with spikes and Preston hit him in the mouth wearing those gloves. *Id.*

Plaintiff states that the video from the hand-held camera shows that Wolford was standing "for a while and the officers continue to tell [plaintiff] to stop resisting." *Id.* at p. 6. He further avers that "it took a long time after Officer Wolford stood up to bring [him] out of the cell." *Id.* He claims that it was during this time that Wolford twisted plaintiff's ankle and, after doing so, he placed leg irons on plaintiff's ankles. *Id.* at pp. 6 – 7. Plaintiff further states that he wants to rely on the medical records already before the court for his allegation that his ankle was not examined by the nurse and that his ankle was injured. *Id.* at pp. 7 – 8.

## II. STANDARD OF REVIEW

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

III. ANALYSIS

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

Defendants have yet to directly address plaintiff's allegations that Preston punched him in the face and Wolford stood up and twisted his ankle. They have not presented this court with declarations under oath stating whether those events happened and, if they did, why those actions were taken. Plaintiff, however, has stated under oath that defendants Preston and Wolford engaged in this conduct and that he was not resisting at the time the force was used. In cases where, as here, defendants offer no justification for the force used, there exists a genuine dispute of material fact regarding whether the force was applied maliciously precluding summary judgment. The issue requires credibility determinations not appropriate for resolution on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On the record before this court, defendants are not entitled to summary judgment and their motion must be denied. A separate order follows.

August 31, 2011
Date

J. Frederick Motz
United States District Judge